# Richmond.

## Virginia Portland Cement Co. v. Seal.

### November 18, 1909.

Absent, Keith, P., and Buchanan, J.

1. Master and Servant—*Safe Place—Comparative Safety—Evidence.*
   It is the duty of a master to furnish his servant a reasonably
   safe place in which to work, not an absolutely safe place, nor
   the safer or safest place. It is not for the jury to compare
   places and determine which was the safer, but to determine
   whether the place furnished was reasonably safe. Nor is evi-
   dence admissible upon the relative safety of different places.
2. Master and Servant—*Safe Place—Promise to Change Place—Safety
   of New Place.*—If the master has promised his servant to
   change his place of work to a designated place evidence is ad-
   missible to show that that place is a safe place, but if it devel-
   ops later that the master positively refused to make the change
   then evidence as to the safety of the new place is irrelevant.
3. Master and Servant—*Servant's Choice of Methods—Duty to Select
   Safe Method—Custom.*—Where there is a safe and an unsafe way
   of doing a piece of work, both of which are open and obvious, and
   it is the duty of the servant to select the method, he should
   select the safe method, and the fact that he has theretofore, with-
   out the knowledge of the master, used the unsafe method will
   not relieve him of the charge of negligence if injured while
   pursuing that method. Custom or usage does not excuse neg-
   ligence, nor relieve a servant from the duty of exercising reason-
   able care.

Error to a judgment of the Circuit Court of Augusta county
in an action of trespass on the case. Judgment for the plaintiff.
Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. C. Gordon* and *Jos. A. Glasgow,* for the plaintiff in error.

*Charles & Duncan Curry* and *Timberlake & Nelson,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by the plaintiff, L. H. Seal, to recover damages for a personal injury alleged to have been caused by the negligence of the defendant company. There was a verdict and judgment in favor of the plaintiff, which is brought under review by this writ of error.

The defendant company was engaged in the manufacture of cement. For the purpose of obtaining stone to be used in making the cement, the company operated several quarries. At one of these quarries the plaintiff was employed as "cut foreman," and had working under him some fifteen men. When the rock was thrown down from the bluff above, along the face of the quarry, it had to be broken up so that it could be loaded on the cars and moved to the plant. This was accomplished by the use of "doby blasts." These blasts were connected with a lead wire which was connected with an electric battery, and by plunging the battery the blasts were fired and the rock broken. The point designated by the defendant company from which the blasts were fired was a large tree measuring twelve feet one inch in circumference and three feet ten inches in diameter. This tree was situated something over three hundred feet from the middle of the quarry. The lead wire, which was used to fire the blasts, ran back to the tree as a firing point, and the plaintiff stood behind the tree for protection when firing the dobies. A number of these doby blasts could be connected with the lead wire and fired at the same time by one plunge of the battery, which was stationed behind the tree.

At the time of the accident in question the plaintiff had, with the aid of the men working under him, made a large number of these dobies, and was standing behind the tree operating the

electric battery.   When the blasts went off he was struck by a rock on the left arm, causing the injury complained of.

The contention of the plaintiff was that the duty of the defendant company required it to furnish him with a reasonably safe place to work, and that behind the tree designated by the company for that purpose was not a reasonably safe place from which to fire the blasts.

The contention of the defendant company was that behind the tree was a reasonably safe place to fire from, when the work was properly done; that the plaintiff was the author of his own injury by firing so many blasts at once, thus creating an enfilading fire from both ends of the quarry at the same time; and that the plaintiff was fully aware of the danger of firing from both ends of the quarry at the same time, it being open and obvious to anyone.

The first assignment of error is to the action of the court in allowing the plaintiff's witness, J. L. Deering, over the objection of the defendant, to testify that a certain power-house, mentioned in the record, was a reasonably safe place from which to fire doby blasts; and in allowing the witness, William Calvin, to testify that the power-house was a safer place to fire doby blasts from than the tree to which the lead wire ran.

This evidence was clearly inadmissible.   The question for the jury was, whether the place furnished by the company for firing doby blasts was a reasonably safe place or not.   There was no obligation upon the defendant to furnish an absolutely safe place, nor did it have to furnish the safer or the safest place.   Its obligation was discharged when, in the exercise of ordinary care, it furnished a reasonably safe place.   It was not for the jury to compare places and determine which was the safer, but to determine whether the place furnished was reasonably safe.   *Bertha Zinc Co.* v. *Martin,* 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999; *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 27 S. E. 509.

It is contended on behalf of the plaintiff that this evidence

was admissible because Hunter, the general foreman, had promised the plaintiff to remove the firing point to the power-house.

This contention cannot be sustained. The statement of the plaintiff with respect to this matter was that he had complained to Hunter, the foreman, three times; that the first time he said the tree was a safe place; the second time he promised to remove the firing point; and the third and last time he refused to remove the firing point, saying that "it was all right." So that at the time the accident happened there was no promise to change the firing point, but, on the contrary, an emphatic refusal to do so.

It is further insisted that if this evidence was inadmissible the defendant has waived the error by allowing the plaintiff, without objection, to testify that the power-house was a safe place.

This contention is equally untenable. The record shows that when the plaintiff stated that the power-house was a safe place he had immediately before stated, as alleged in his declaration, that Hunter, the foreman, had promised him to move the firing point to the power-house. As the matter then stood, the statement rested upon a promise to move the firing point to the power-house. But when the plaintiff afterwards stated that the company had finally refused to change the firing point, it made the inquiry, whether any other was a safe place, irrelevant; and objection was made, stating at length the grounds relied on as showing this whole line of evidence to be improper.

The action of the court in modifying instruction No. 9, asked for by the defendant, is assigned as error.

This instruction is as follows: "The court instructs the jury that if they believe from the evidence that it was the duty of the plaintiff to fix the location and length of the line of the series of dobies to be fired at the base of the quarry, and if they believe from the evidence that, in the reasonable operation of said quarry, the length of said line of the series of dobies to be fired could be fixed at such a length as to make the tree a safe place

to fire them from, and that the said line of the series of dobies could have been located in such a length as to make the tree an unsafe place to fire them from, then it was the duty of the plaintiff to adopt the safe method and to fix the length of the said line of the series of dobies of such a length as to render the tree a safe place; and if the jury believe from the evidence that plaintiff failed to adopt the safe method, and that his failure so to do contributed to his injury, then the jury must find for the defendant."

This instruction was modified by striking out the word "reasonable" and substituting in its place the word "usual," making the sentence read, "and if they believe from the evidence that in the *usual* operation of said quarry," instead of "in the *reasonable* operation of said quarry."

The modification of this instruction was error. The plaintiff, at the time of the accident, was, as cut foreman, in charge of the operation of the quarry and especially of the firing of the dobies. The evidence clearly tended to show that there was a safe way and an unsafe way of firing the dobies; that the plaintiff had, at the time of the accident, put down an unusual number of blasts, running entirely around the face of the quarry, which was concave in shape; that the danger arose from firing these blasts around the whole face of the quarry at the same time, thus creating an enfilading fire from the right and left of the tree at one and the same time; that the safe way to fire the dobies from behind the tree was to fire them in sections, and not all at the same time; and that the company did not know that the unsafe way was being pursued.

The instruction as modified was well calculated to confuse and mislead the jury. They were practically told that, although there was a reasonably safe way of firing the doby blasts, the plaintiff could adopt the dangerous method if that was his usual or customary way of operating; that the plaintiff could establish a custom of doing the work in a dangerous way, and then say, when charged with not using reasonable care for

his own protection, that it was his usual way of doing the work. Custom or usage does not excuse negligence, and could not relieve the plaintiff from the duty of exercising reasonable care. *Simmons & Winch* v. *McConnell,* 86 Va. 494, 10 S. E. 838, 21 Am. and Eng. Enc. L. 524, and cases cited.

As the case must be remanded for the errors already pointed out, it would not be proper to comment on the evidence; nor is it necessary to consider other questions presented in the record that may not arise on another trial.

For these reasons the judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed.*